Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BANCO POPULAR DE PUERTO RICO<br><br>Recurrida<br><br>V.<br><br>CHALLENGER BRASS & COPPER CO., INC. Y OTROS<br><br>Peticionarios | TA2025CE00646 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm. BY2023CV03279<br><br>Sobre: Cobro de Dinero Ordinario, Ejecución de Hipoteca y otros |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Martínez Cordero y el Juez Cruz Hiraldo.[1]

Rodríguez Casillas, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Comparecen Challenger Brass & Copper Co.; Abimael Padilla Negrón, Kassandra Pagán Medina y la Sociedad Legal de Gananciales compuesta por ambos; Whesley Sepúlveda Rodríguez, Agnes Díaz Rivera y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "los peticionarios" o "parte peticionaria"), para solicitar la revisión de una Resolución emitida el 18 de septiembre de 2025, y notificada el 19 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("TPI" o "foro de instancia"). Allí, el TPI ordenó la continuación del procedimiento de embargo contra la copeticionaria Challenger Brass & Cooper Co., ya que los copeticionarios Abimael Padilla Negrón y

---

[1] Conforme a la Orden Administrativa OATA-2025-208 emitida el 21 de octubre de 2025, que designa al Hon. Roberto Rodríguez Casillas en sustitución del Hon. Abelardo Bermúdez Torres, quien dejó de ejercer funciones como Juez del Tribunal de Apelaciones.

Whesley Sepúlveda Rodríguez presentaron sendas peticiones de quiebra bajo el Capítulo 13 de la Ley Federal de Quiebras, *infra.*

**Ese mismo día**, la parte peticionaria presentó una *Moción en Auxilio de Jurisdicción* solicitando la paralización de los procesos en el TPI, hasta tanto se atendiera el auto de *certiorari* sometido.

El **21 de octubre de 2025**, este Panel declaró Con Lugar la moción de paralización y ordenamos al Banco Popular de Puerto Rico ("BPPR" o "parte recurrida") a mostrar causa por la cual no debíamos de expedir el auto de *certiorari* solicitado.

El **24 de octubre de 2025**, el BPPR compareció en oposición a la expedición del *certiorari.*

Con la comparecencia de las partes, procedemos a **denegar** la expedición del auto de *certiorari* y a ordenar la continuación de los procesos sin más dilación.

-I-

El **24 de mayo de 2019**, BPPR y la copeticionaria Challenger Brass otorgaron un Contrato de Préstamo, mediante el cual BPPR concedió a Challenger Brass & Cooper Co., una línea de crédito rotativa por la suma principal de $2,000,000.00, para financiar cuentas e inventario y cancelar una línea de crédito existente ("Préstamo I"). Posteriormente, el 19 de marzo de 2021, BPPR y Challenger Brass & Cooper Co., otorgaron un Contrato de Préstamo, mediante el cual la parte recurrida concedió una línea de crédito no rotativa por la suma principal de $600,000.00, con el propósito de financiar la compra de material crudo para cumplir con cierto contrato entre Challenger Brass & Cooper Co., y un tercero, Eaton Corporation ("Préstamo II"). Tanto el Préstamo I como el Préstamo II fueron garantizados con una propiedad inmueble perteneciente a Challenger Brass & Cooper Co., y con garantías personales e

ilimitadas, otorgadas por los copeticionarios Abimael Padilla Negrón y Whesley Sepúlveda Rodríguez.[2]

El **28 de octubre de 2022**, BPPR y la parte peticionaria otorgaron un acuerdo titulado: *Forbearance Agreement* ("Acuerdo de Moratoria"). En síntesis, acordaron que, siempre y cuando los peticionarios cumplieran con sus obligaciones de pago allí pactadas —para poner al día sus préstamos— el banco no ejecutaría la colateral hasta el 30 de junio de 2023 o hasta que ocurriera un evento de incumplimiento bajo el *Acuerdo de Moratoria*, lo que ocurriera primero.

El **14 de junio de 2023**, BPPR presentó la demanda sobre *Sentencia por Consentimiento* en cobro de dinero y ejecución de hipoteca, ante el incumplimiento de pago por los peticionarios con el Acuerdo de Moratoria.

El **26 de junio de 2023**, el TPI emitió la *Sentencia por Consentimiento*, la cual fue notificada el 29 de junio de 2023.[3] Sin embargo, el **26 de diciembre de 2023**, BPPR solicitó al foro de instancia que volviera a notificar dicha Sentencia,[4] debido a que había advenido en conocimiento de que Challenger Brass & Cooper Co., había radicado una quiebra (caso #23-01917-11) antes de que el TPI notificara la misma. No obstante, debido a que el **22 de diciembre de 2023**, la Corte de Quiebras desestimó la petición de quiebra —tras solicitud de desistimiento voluntario presentada por Challenger Brass—, BPPR solicitó que se volviera a notificar la referida *Sentencia*.

---

[2] Véase, *Demanda* en la ENTRADA NÚM.1, del recurso de la parte peticionaria.
[3] Véase, *Sentencia por Consentimiento* en la ENTRADA NÚM.8, del recurso de la parte peticionaria.
[4] Véase, *Moción de notificación* en la ENTRADA NÚM.9, del recurso de la parte peticionaria.

Así, el **9 de enero de 2024**, por orden del TPI, la Secretaría emitió una notificación enmendada de la *Sentencia por Consentimiento.* [5]

El **29 de febrero de 2024**, la parte peticionaria presentó una *Solicitud de Relevo de Sentencia.* En resumen, adujo que la *Sentencia por Consentimiento* era nula, ya que la misma no le fue notificada nuevamente y, porque el *Acuerdo de Moratoria* —que dio paso a la misma— se obtuvo mediante coacción.[6]

El **19 de marzo de 2024**, BPPR presentó su *Oposición a la Solicitud de Relevo de Sentencia.* En síntesis, alegó que la *Sentencia por Consentimiento* fue debidamente notificada y negó la nulidad del *Acuerdo de Moratoria,* por tratarse de un intento frívolo de los peticionarios en atrasar el cumplimiento de los pagos y la ejecución de la Sentencia.[7]

El **2 de mayo de 2024**, la parte peticionaria presentó una *Réplica a la Oposición de BPPR,*[8] y el **20 de mayo de 2024**, BPPR una *Dúplica.*[9]

El **30 de agosto de 2024**, el TPI emitió una Resolución en la que declaró *No Ha Lugar* a la *Solicitud de Relevo de Sentencia,* y conjuntamente, emitió una Sentencia *Nunc Pro Tunc "para dejar establecido que la fecha de la sentencia dictada en el caso de autos corresponde al 9 de enero de 2024."*[10] Ese mismo día, el foro de instancia emitió la *Sentencia por Consentimiento Nunc Pro Tunc* ("Sentencia Nunc Pro Tunc").[11]

---

[5] Véase, *Orden* en la ENTRADA NÚM.10, del recurso de la parte peticionaria.
[6] Véase, *Solicitud de Relevo de Sentencia* en la ENTRADA NÚM.17, del recurso de la parte peticionaria.
[7] Véase, *Oposición a la Solicitud de Relevo de Sentencia* en la ENTRADA NÚM. 19, del recurso de la parte peticionaria.
[8] Véase, *Réplica a la Oposición de BPPR* en la ENTRADA NÚM.29, del recurso de la parte peticionaria.
[9] Véase, *Dúplica* de BPPR en la ENTRADA NÚM. 32, del recurso de la parte peticionaria.
[10] Véase, Resolución en la ENTRADA NÚM. 33, del recurso de la parte peticionaria.
[11] Véase, *Sentencia Nunc Pro Tunc* en la ENTRADA NÚM. 34, del recurso de la parte peticionaria.

El **12 de septiembre de 2024**, BPPR solicitó la ejecución de la Sentencia *Nunc Pro Tunc*.[12]

Inconforme, el **16 de septiembre de 2024**, la parte peticionaria presentó una *"Moción de Reconsideración de Sentencia, Resolución y en Oposición a Moción de Ejecución de Sentencia"*. En resumen, adujo que el TPI no podía utilizar el mecanismo de enmienda *nunc pro tunc* para modificar la fecha de la *Sentencia por Consentimiento* originalmente emitida, ya que dicho cambio no obedecía a un mero de error de forma.[13]

El **16 de septiembre de 2024**, el TPI emitió *Orden y Mandamiento de Ejecución de Sentencia*,[14] y luego le concedió a BPPR un término para expresarse en torno a la Moción de Reconsideración.[15]

El **26 de septiembre de 2024**, la parte peticionaria presentó una **segunda** *Moción de Reconsideración de Orden y Mandamiento de Ejecución de Sentencia*. En resumen, volvió a reiterar que se debían paralizar los efectos de la *Orden y Mandamiento de Ejecución de Sentencia* mientras el TPI dilucidaba la moción de reconsideración (presentada el 16 de septiembre de 2024).[16]

El **16 de octubre de 2024**, BPPR presentó su *Oposición a las Mociones de Reconsideración Presentadas por la parte Demandada (SUMAC #36 Y #40) y Solicitud de Sanciones*.[17]

---

[12] Véase, *Moción de Ejecución de Sentencia* en la ENTRADA NÚM. 35, del recurso de la parte peticionaria.

[13] Véase, *Moción de Reconsideración de Sentencia…* en la ENTRADA NÚM. 36, del recurso de la parte peticionaria.

[14] Véase, *Orden y Mandamiento de Ejecución de Sentencia* en las ENTRADAS NÚMS. 37-38, del recurso de la parte peticionaria.

[15] Véase, *Orden* en la ENTRADA NÚM. 39, del recurso de la parte peticionaria.

[16] [16] Véase, *Moción de Reconsideración de Sentencia…* en la ENTRADA NÚM. 40, del recurso de la parte peticionaria.

[17] [17] Véase, *Oposición a la Primera y Segunda Mociones de Reconsideración* en la ENTRADA NÚM. 42, del recurso de la parte peticionaria.

El **23 de octubre de 2024**, el TPI emitió dos (2) Resoluciones separadas en las que denegó la primera y segunda moción de reconsideración de los peticionarios.[18]

El **22 de noviembre de 2024**, la parte peticionaria presentó ante el Tribunal de Apelaciones el recurso de *certiorari* núm. KLCE2024-01274,[19] en el cual denegó la expedición del auto de *certiorari*,[20] así como la subsiguiente moción de reconsideración presentada por los peticionarios.[21]

El **13 de febrero de 2025**, la parte peticionaria presentó ante el Tribunal Supremo de Puerto Rico el recurso de *certiorari* núm. CC-2025-0078,[22] el cual fue denegado,[23] tanto la expedición del recurso como en las dos (2) subsiguientes mociones de reconsideración presentadas por los peticionarios.

Advenida **final y firme** la *Sentencia Nunc Pro Tunc*, el **24 de junio de 2025**, BPPR informó al TPI que continuaría con los procedimientos en ejecución de la sentencia,[24] por lo que el foro de instancia tomó conocimiento de ello.[25]

El **2 de agosto de 2025**, la parte peticionaria presentó una *Urgente Moción Solicitando Paralización de los Procedimientos*. En resumen, solicitó que se ordenara la paralización de todos los procedimientos, en virtud de la Sección 362 del Código de Quiebra Federal, 11 U.S.C. Sec. 362, tras la petición de quiebra del copeticionario y garantizador Abimael Padilla.[26]

---

[18] Véase, *Órdenes* en las ENTRADAS NÚMS. 44-45, del recurso de la parte peticionaria.

[19] Véanse, *Moción Informando Presentación de Recurso; Orden*; y *Carta Informando Presentación de Recurso* en las ENTRADAS NÚMS. 47,48-49, del recurso de la parte peticionaria.

[20] Véase, *Resolución KLCE2024-01274* en la ENTRADA NÚM. 50, del recurso de la parte peticionaria.

[21] Véase, *Resolución* en la ENTRADA NÚM. 51, del recurso de la parte peticionaria.

[22] Véase, *Orden* en la ENTRADA NÚM. 52, del recurso de la parte peticionaria.

[23] Véase, *Resolución CC-2025-0078* en la ENTRADA NÚM. 56, del recurso de la parte peticionaria.

[24] Véase, *Moción Informativa* en la ENTRADA NÚM. 58, del recurso de la parte peticionaria.

[25] Véase, *Orden* en la ENTRADA NÚM. 61, del recurso de la parte peticionaria.

[26] Véase, *Urgente Moción Solicitando Paralización* en la ENTRADA NÚM. 64, del recurso de la parte peticionaria.

El **4 de agosto de 2025**, BPPR se opuso a la moción de paralización. En síntesis, arguyó que no existía impedimento legal alguno para que los procedimientos de ejecución continuaran con respecto a todos los demás copeticionarios que no estaban en quiebra.[27]

El **4 de agosto de 2025**, el TPI le emitió y notificó la siguiente orden:

> Evaluado el escrito "URGENTE MOCIÓN SOLICITANDO PARALIZACIÓN DE LOS PROCEDIMIENTOS" presentado por la parte demandada (entrada 64) y la oposición de la demandante (entrada 65) resolvemos:
> Parte demandada muestre causa por la cual este tribunal no debería continuar los procedimientos post-sentencia en contra de Challenger Brass, Pagán-Medina y los Sepúlveda-Díaz y solamente paralizar los procedimientos post sentencia instados contra los codemandados Padilla-Negrón. Según la parte demandante los codemandados Padilla-Negrón son los únicos deudores en quiebra protegidos por la paralización automática. Tenga 10 días la parte demandada para cumplir con esta orden.[28]

Tras los peticionarios no responder a lo antes ordenado, el **28 de agosto de 2025** el TPI paralizó los procedimientos únicamente en contra de Abimael Padilla.[29]

El **28 de agosto de 2025**, BPPR informó al TPI que había advenido en conocimiento de la petición de quiebra de otro copeticionario y garantizador, Whesley Sepúlveda Rodríguez, por lo cual, solicitó que se paralizaran los procedimientos post-sentencia únicamente en contra de dicho copeticionario.[30] Ese mismo día, el foro de instancia paralizó los procedimientos en contra de Whesley Sepúlveda Rodríguez, continuando los mismos en contra de los demás copeticionarios; a saber: Challenger Brass & Copper, Co., Kassandra Pagán Medina y Agnes Díaz Rivera.[31]

---

[27] Véase, *Oposición a Moción...* en la ENTRADA NÚM. 65, del recurso de la parte peticionaria.
[28] Véase, *Orden* en la ENTRADA NÚM. 66, del recurso de la parte peticionaria.
[29] Véase, *Orden* en la ENTRADA NÚM. 68, del recurso de la parte peticionaria.
[30] Véase, *Moción Informativa* en la ENTRADA NÚM. 69, del recurso de la parte peticionaria.
[31] Véase, *Orden* en la ENTRADA NÚM. 70, del recurso de la parte peticionaria.

El **29 de agosto de 2025**, BPPR presentó una *Moción Sometiendo Documentos Complementarios* para la celebración de la primera subasta que iba a llevarse a cabo el 2 de septiembre de 2025.[32]

Ese mismo día —**29 de agosto de 2025**— la parte peticionaria presentó otra *Urgente Moción Solicitando Paralización de los Procedimientos y Se Deje Sin Efecto Subasta*. En resumen, reiteró que en los procedimientos post-sentencia de autos debían ser paralizados en su totalidad debido a las peticiones de quiebra de los copeticionarios y garantizadores, Abimael Padilla Negrón y Whesley Sepúlveda-Rodríguez, dado que el deudor principal de BPPR era la corporación Challenger Brass & Copper, Co., quien a su vez, ostentaba el título de la propiedad inmueble objeto de ejecución. Arguyó que el TPI estaba impedido de continuar con los procedimientos de ejecución de sentencia, ya que —tanto la corporación Challenger Brass & Copper Co., como la propiedad inmueble objeto del Aviso de subasta a celebrarse el 2 de septiembre de 2025— eran parte integral del caudal de quiebras de Abimael Padilla Negrón como de Whesley Sepúlveda Rodríguez.[33]

En ese mismo día **29 de agosto de 2025**, el TPI emitió Orden acogiendo la *Urgente Moción* de la parte peticionaria, y consecuencia, ordenó la paralización de los procedimientos post-sentencia "hasta que [el] tribunal disponga otra cosa". Además, ordenó a BPPR a responder a la *Urgente Moción* de los peticionarios.[34]

También, ese mismo día **29 de agosto de 2025**, BPPR presentó una *Moción Informativa en Torno a "Urgente Moción (Ent. #73) y Orden de Paralización (Ent. #75)"*. En síntesis, adujo que el argumento levantado por la parte peticionaria era errado en

---

[32] Véase, *Moción Sometiendo...* en la ENTRADA NÚM. 72, del recurso de la parte peticionaria.
[33] Véase, *Urgente Moción Solicitando Paralización de los Procedimientos y Se Deje Sin Efecto Subasta* en la ENTRADA NÚM. 73, del recurso de la parte peticionaria.
[34] Véase, *Orden* en la ENTRADA NÚM. 75, del recurso de la parte peticionaria.

derecho, y (ii) resaltó al foro de instancia que los peticionaros intencionalmente estaban escondiendo el hecho de que la quiebra de Abimael Padilla Negrón fue desestimada.[35]

En apoyo a lo antes indicado, el **1 de septiembre de 2025**, BPPR presentó *Urgente Oposición a "Urgente Moción" (ENT #73), Solicitud de Reconsideración de Orden de Paralización (ENT #75) y Para Que se Reinstalen Las Fechas de Subasta*. En síntesis, adujo que la paralización automática por la quiebra de Whesley Sepúlveda y Abimael Padilla únicamente le aplicaba a éstos, ya que ambos radicaron la petición bajo el Capítulo 13 del Código de Quiebras –el cual solo aplica a deudas de consumidor—. Además la paralización no podía hacerse extensiva al presente pleito en el que se cobra una deuda comercial, ni podía extenderse la paralización de un Capítulo 13 hacia entidades jurídicas como a la corporación Challenger Brass & Copper Co. Tampoco, la propiedad inmueble objeto de ejecución no podía ser parte del caudal de quiebra de Whesley Sepúlveda ni Abimael Padilla, ya que ninguno de éstos son, ni han sido, los titulares registrales de dicha propiedad.[36]

El **5 de septiembre de 2025** y notificada el **8 de septiembre de 2025**, el TPI emitió Orden dando el asunto por sometido para evaluación y manteniendo los procedimientos paralizados mientras emite su determinación.[37]

El **18 de septiembre de 2025** y notificada el **19 de septiembre de 2025**, el TPI emitió la *Resolución Interlocutoria* recurrida en la cual acogió los planteamientos de BPPR y determinó lo siguiente:

> Evaluado el expediente acogemos la reconsideración presentada por la parte demandante Banco Popular de Puerto Rico.

---

[35] Véase, *Moción Informativa en Torno…* en la ENTRADA NÚM. 76, del recurso de la parte peticionaria.
[36] Véase, *Urgente Oposición a "Urgente Moción"…* en la ENTRADA NÚM. 78, del recurso de la parte peticionaria.
[37] Véase, *Orden* en la ENTRADA NÚM. 79, del recurso de la parte peticionaria.

> Surge del expediente judicial que el inmueble que se ha de ejecutar le pertenece a Challenger Brass & Copper Co., Inc. y no a los codemandados acogidos a las protecciones de la Ley de Quiebras. No existe motivo para paralizar el pleito en lo que concierne a Challenger Brass & Copper Co., Inc. ("Challenger Brass").
>
> Entendiéndose, que si procede ejecutar la sentencia en lo que concierne a Challenger Brass & Copper Co., Inc.[38]

En virtud de ello, BPPR volvió a solicitar fechas de subastas para las que se separaron las fechas del 30 de octubre de 2025, y los días 6 y 13 de noviembre de 2025.[39]

Inconforme, el **20 de octubre de 2025**, la parte peticionaria presentó ante nos el recurso de certiorari que nos ocupa y en el (TA cual hizo el siguiente señalamiento de error:

> ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DEJAR SIN EFECTO SU DETERMINACIÓN DE PARALIZAR EL CASO DE EPÍGRAFE EN CUANTO A TODOS LOS CODEMANDADOS DE ESTE CASO Y ORDENAR LA EJECUCIÓN DE SU SENTENCIA EN CUANTO AL CODEMANDADO CHALLENGER BRASS & COOPER, PESE A QUE DICHA COMPAÑÍA TIENE ACTIVOS Y ES PARTE INTEGRAL DEL PATRIMONIO DE LAS PARTES CODEMANDADAS EN ESTE CASO, ABIMAEL PADILLA Y WHESLEY SEPÚLVEDA.

Además, los peticionarios conjuntamente presentaron una *Moción en Auxilio de Jurisdicción*, en la cual solicitaron la paralización de los procesos post-sentencia.

El **21 de octubre de 2025**, este Tribunal de Apelaciones emitió una Resolución mediante la cual declaramos *Ha Lugar* la referida *Moción* y paralizamos los procesos post-sentencia —hasta que dispongamos lo contrario—; además, concedimos a BPPR diez (10) días para mostrar causa por la cual no se debía expedir el auto de *certiorari*.

El **24 de octubre de 2025**, BPPR presentó su escrito en *Oposición a la Expedición del Certiorari y/o Alegato en Oposición*. Por lo cual, el recurso quedó perfeccionado para la consideración del Panel Especial.

---

[38] [38] Véase, *Resolución Interlocutoria* en la ENTRADA NÚM. 82, del recurso de la parte peticionaria.

[39] Véase, *Oposición a la Expedición del Certiorari y/o Alegato en Oposición* en la ENTRADA NÚM. 5, del recurso de la parte peticionaria.

**-II-**

**-A-**

En el recurso que atendemos el Tribunal Supremo de Puerto Rico ha señalado que el auto de *certiorari* constituye *"[u]n vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior"*.[40] Por lo tanto, se entiende por discreción como el *"[t]ener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción"*.[41]

Por su parte, la Regla 52.1 de Procedimiento Civil,[42] delimita las instancias en que este foro habrá de atender y revisar mediante *certiorari* las resoluciones y órdenes emitidas por los tribunales de instancia, a saber:

> [E]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. [...].[43]

Con el objetivo de que podamos ejercer de una manera prudente la facultad discrecional que se nos ha delegado para entender o no en los méritos del asunto esbozado en este recurso, nuestros oficios se encuentran en la Regla 40 del Reglamento del Tribunal de Apelaciones,[44] que a continuación detallamos:

---

[40] *Municipio Autónomo de Caguas v. JRD Construction, Inc., et al*, 201 DPR 703, 711 (2019).; *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337 – 338 (2012).

[41] *García v. Asociación*, 165 DPR 311, 321 (2005).

[42] *Reglas de Procedimiento Civil de 2009*, 32 LPRA Ap. V., R. 52.1.

[43] *Íd.* Énfasis nuestro.

[44] Regla 40 del *Reglamento del Tribunal de Apelaciones*, 4 LPRA Ap. XXII-B, R.40.

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

**(A)** Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**(B)** Si la situación de hechos planteada es la más indicada para el análisis del problema.

**(C)** Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

**(D)** Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**(E)** Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**(F)** Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**(G)** Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[45]

Por consiguiente, al tener discreción judicial para expedir o denegar el auto de *certiorari*, nuestro Tribunal Supremo de Puerto Rico ha dispuesto que:

> [D]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.[46]

**-B-**

En atención a la controversia que nos ocupa, la sección 362(a) del Código de Quiebras Federal establece un mecanismo de **paralización automática** *(automatic stay)* que se activa con una petición de quiebra.[47] Es decir, al someter la petición de quiebra se paraliza automáticamente todo proceso judicial o extrajudicial de cobro de dinero en contra del deudor, incluyendo la ejecución de sentencias obtenidas previo al inicio del caso.[48] Bajo la referida sección la paralización impide *"entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto contra el deudor, o para*

---

[45] *Íd.* Énfasis nuestro.
[46] *Íd.*; *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[47] 11 USC sec. 362(a).
[48] *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 255 (2012).

*ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra"*.[49] Incluso*, puede ser tan abarcadora que *paraliza litigios que tienen poco o nada que ver con la situación financiera del deudor*.[50] Así, una vez presentada la petición de quiebra, la paralización automática surte efecto, extendiéndose hasta que se dicte la sentencia final.[51] Por lo que la consecuencia principal de una paralización automática es que el tribunal en el que se dilucida una reclamación contra el deudor que se somete al procedimiento de quiebra, perderá jurisdicción sobre la causa de acción.[52]

En específico, la citada sección 362(a) establece ocho (8) instancias en las que se paraliza automáticamente una acción en contra del deudor:

> (a) Salvo lo dispuesto en la subsección (b) de esta sección, una petición presentada bajo la sección 301, 302 o 303 de este título, o una solicitud presentada bajo la sección 5 (a) (3) de la Ley de Protección del Inversor de Valores de 1970, opera como una suspensión, aplicable a todas las entidades, de:
>
> (1) el inicio o continuación, incluida la emisión o el empleo de un proceso, de una acción o procedimiento judicial, administrativo o de otro tipo contra el **deudor** que se inició o podría haberse iniciado antes del comienzo del caso bajo este título, o para recuperar un reclamo contra el deudor que surgió antes del comienzo del caso bajo este título;
>
> (2) la ejecución, contra el **deudor** o contra los bienes de la masa, de una sentencia obtenida antes del inicio del caso en virtud de este título;
>
> (3) cualquier acto para **obtener la posesión** de la propiedad del patrimonio o de la propiedad del patrimonio o para **ejercer control** sobre la propiedad del patrimonio;
>
> (4) cualquier acto para crear, perfeccionar o hacer cumplir cualquier gravamen **contra la propiedad del patrimonio**;
>
> (5) cualquier acto para crear, perfeccionar o hacer cumplir contra la propiedad del **deudor** cualquier gravamen en la medida en que dicho gravamen garantice un reclamo que surgió antes del comienzo del caso bajo este título;
>
> (6) cualquier acto para cobrar, evaluar o recuperar un reclamo contra el **deudor** que surgió antes del comienzo del caso bajo este título;
>
> (7) la compensación de cualquier deuda adeudada al **deudor** que surgió antes del comienzo del caso bajo este título contra cualquier reclamo contra el deudor; y

---

[49] *Allied Management Group, Inc. v. Oriental Bank,* 204 DPR 374, 387 (2020); 11 USC sec. 362(a)(1).

[50] *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490-491 (2010).

[51] *Allied Management Group, Inc. v. Oriental Bank, supra,* pág. 387.

[52] *Marrero Rosado v. Marrero Rosado, supra*, pág. 491.

(8) el inicio o continuación de un procedimiento ante el Tribunal Fiscal de los Estados Unidos con respecto al **deudor**. Énfasis y traducción nuestra.[53]

No obstante, el Tribunal Supremo de Puerto Rico se ha expresado que la paralización antes dicha es exclusiva del deudor:

> No obstante, hay que resaltar que, de ordinario, **esta protección es exclusiva del deudor que se acoge a la quiebra**, por lo cual *"[l]a responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste"*.[54] Esto tiene el propósito de garantizar el ejercicio de cualquier acción que tenga el acreedor contra cualquier otra persona que se hubiere obligado conjuntamente con el deudor quebrado. Énfasis nuestro.[55]

---

[53] 11 USC sec. 362(a), *supra.* **A continuación, la versión en original.**
  (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5 (a) (3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of:
  (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding **against the debtor** that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
  (2) the enforcement, **against the debtor or against property of the estate**, of a judgment obtained before the commencement of the case under this title;
  (3) any act to obtain possession **of property of the estate or property from the estate** or to exercise control over property of the estate;
  (4) any act to create, perfect, or enforce any lien **against property of the estate;**
  (5) any act to create, perfect, or enforce **against property of the debtor** any lien to the that such lien secures a claim that arose before the commencement of the case under this title;
  (6) any act to collect, assess, or recover a claim **against the debtor** that arose before the commencement of the case under this title;
  (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim **against the debtor**;
  (8)  the commencement or continuation of a proceeding before the United States Tax Court concerning **the debtor**. Énfasis nuestro.

[54] Véase, *Allied Management Group, Inc. v. Oriental Bank, supra,* pág. 398, citando en aprobación *Cámara Insular Etc. v. Anadón*, 83 DPR 374, 380 (1961); 11 USCA sec. 524(e); 2 Collier on Bankruptcy Sec. 362.03[3][d] (2010).
  Note que la citada sec. 524 (e), dispone la siguiente limitación en cuanto a la descarga de la deuda del deudor:
  *Salvo lo dispuesto en la subsección (a) (3) de esta sección, la descarga de una deuda del deudor no afecta la responsabilidad de ninguna otra entidad o la propiedad de cualquier otra entidad por dicha deuda.* Traducción nuestra.

[55] Véase, *Allied Management Group, Inc. v. Oriental Bank, supra*, citando en aprobación *Peerless Oil v. Hermanos Pérez, supra*, pág. 256; *Cámara Insular Etc. v. Anadón, supra*, pág. 380.

También, las Cortes de Quiebras tienen amplia discreción para terminar, anular, modificar o condicionar, a solicitud de parte o *motu proprio*, los efectos de la paralización automática por alguna de las causas enumeradas en el Código de Quiebras.[56] Una de esas circunstancias ocurre cuando una Corte de Quiebras pone fin a la paralización automática para permitir que un litigio continúe en otro foro, especialmente si involucra multiplicidad de partes, si está listo para juicio, o si es lo más prudente en atención al aspecto de economía judicial.[57]

Por otra parte, el Capítulo 13 en la Sección 1301(a) del Código de Quiebras, invocada por la parte peticionaria en el presente caso, aplica a duda de consumo,[58] en lo pertinente dispone:

> **(a)** Salvo lo dispuesto en las subsecciones (b) y (c) de esta sección, después de la orden de alivio bajo este capítulo, <u>un acreedor no puede actuar, ni iniciar o continuar ninguna acción civil, para cobrar la totalidad o parte de una</u> **deuda de consumo del deudor de cualquier persona que sea responsable de dicha deuda con el deudor, o que garantizara dicha deuda**, <u>a menos que</u>...
> **(1)** **dicha persona se hizo responsable o garantizó dicha deuda en el curso ordinario de los negocios de dicha persona**; o
> **(2)** el caso se cierra, se desestima o se convierte en un caso bajo el capítulo 7 u 11 de este título. Énfasis nuestro.[59]

Nótese que la aludida sección aplica **únicamente** a las deudas de consumo, por lo que si la deuda es una comercial no impide al

---

[56] 11 USCA sec. 362.

[57] Véase, *Allied Management Group, Inc. v. Oriental Bank, supra,* págs. 388-389, citando en aprobación *Marrero Rosado v. Marrero Rosado, supra,* pág. 491; Collier, *supra,* Vol. 3, Sec. 362.07[3][a].

[58] El término "deuda de consumidor" significa la duda contraída por un individuo principalmente para un propósito personal, familiar o doméstico. 11 USC sec. 101(8).

[59] 11 USC sec. 1301(a). **A continuación original.**
> **(a)** Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—
> **(1)** such individual became liable on or secured such debt in the ordinary course of such individual's business; or
> **(2)** the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

acreedor actuar, iniciar o continuar una acción civil para cobrar la totalidad o parte de una deuda de consumo del deudor.

Finalmente, tampoco se considera una deuda de consumo, cuando la persona se hizo responsable o garantizó dicha deuda en el curso ordinario de los negocios de dicha persona.

-III-

En síntesis la parte peticionaria nos señala que el TPI erró al emitir la *Resolución Interlocutoria* dando paso al procedimiento de subasta del bien inmueble propiedad de la deudora Challenger Brass & Copper Co., a pesar de que los copeticionarios y garantizadores del préstamo comercial Abimael Padilla Negrón y Whesley Sepúlveda Rodríguez presentaron sendas peticiones de quiebra bajo el Capítulo 13 de la Ley Federal de Quiebras; aún cuando este Capítulo solo cubre deudas de consumo.

Conforme el derecho aplicable antes esbozado, resolvemos que la *Resolución Interlocutoria* no presenta ninguna de las circunstancias contempladas en la Regla 52.1 de Procedimiento Civil, *supra,* que nos permita expedir el auto solicitado.

Tampoco encontramos justificación alguna para intervenir con la *Resolución* recurrida, a la luz de los criterios establecidos en la citada Regla 40 de este Tribunal de Apelaciones. Por lo tanto, la determinación recurrida constituye una decisión dentro del claro ejercicio de discreción conferido a los tribunales de primera instancia y de su facultad de manejar los casos de la manera que entiendan más adecuada, conforme las normas de derecho aplicable y los hechos ante su consideración.

-IV-

Por los fundamentos antes expuestos, **denegamos** la expedición del auto de *certiorari* solicitado. Así, ordenamos la

continuación inmediata de los procedimientos post-sentencia sin mayor dilación.[60]

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[60] Reiteramos que, al no expedirse el auto, el TPI no tiene que esperar por nuestro mandato. Por lo que el foro de instancia puede continuar con los procedimientos sin más dilación.